Ms. Arevalo v. Coloplast Corporation. Good morning, Your Honors, and may it please the Court, I'm Thomas Burns and I represent Michelle Arevalo. Ordinarily, Daubert vests district courts with substantial discretion to admit or exclude expert testimony, but even under Daubert, district courts never have discretion to misunderstand or misdescribe the record. Here, that's exactly what happened. Mainly because the district court didn't get the full deposition of Dr. Rosenzweig until late in the game, it factually misunderstood the record in two key — misunderstood the record. Well, let me ask you this. Let's break down the orders, because I think that's an easier way to look at this. So in Order 1 is the exclusion of the specific causation, and in Order 2 is the denial of the motion to reconsider. How in Order 1 — I'm not talking about Order 2 right now, so only Order 1 — how in Order 1 can the district court err or abuse its discretion in misdescribing the record, as you phrased it, when it doesn't have the deposition in front of it? I'd obviously like to be talking about it when the full deposition — We'll get there. There — this is where I think everybody in the game kind of let the district court down. The MDL transfers the case — I'm getting to your answer. It just takes a little while to get to the answer. Please get there quick. Yes. He's got in front of him a motion that attaches excerpts of the deposition, but it doesn't attach the full deposition. I think it was their obligation to not, in the motion, say that there wasn't evidence of stuff when they knew that in the deposition — Yeah, but that doesn't go to — sorry, Judge, were you about to say something? Sorry. That doesn't go to the district court abusing its discretion. That might go to your opposing counsel not doing what it's supposed to do, and there's other remedies for that. But we're going to say something very — when we say a district court abuses discretion, it's a big deal, because that means that there's a wide range of things that could have done, and there's judges all over that could have done stuff within that, and they acted outside of that. And I take that very seriously. And so it just seems to me that, only talking about the first order, that the district court — we can't say that it abuses discretion where it didn't refer to evidence it did not have in front of it. It's much, much harder if it's possible. Okay. And it's thin. The things it's got in front of them are several general expert reports, specific expert report, some specific parts of depositions, and then the motions follow. So I'm going to ask you a tough question. Do you agree with me that — I think it's page 12 of the specific report regarding Ms. Aravello — that that part was not sufficient in and of itself for a — I know you guys — the disparate diagnosis. I know you all use a different terminology, and that's fine. I know. And you're probably right. But I think that ship has sailed. But the differential diagnosis, that itself, only looking at that, was not sufficient. I don't, because when you're — it's the difference between the Rule 26 analysis and the Daubert analysis. The Daubert analysis is just supposed to be, did you apply a reasonable methodology? Chapman — Chapman seems to say, though, that there's three steps to this. Step one, it seems he actually did comply with, which is list the possible causes. And then step two is, you have to eliminate them, but you have to eliminate them with a procedure and giving reasons, based on medicine, why you would have to do that. And I just — I'm having trouble seeing how this is consistent with Chapman. Correct. So it's like, rule in, rule out. That's right. He's definitely ruled it in. I think everybody agrees on that. The ruling out is a little thinner, because it just — in the report, he just says, you don't have — Thin is a nice way to say it. I just — I don't see anything there, and I think that's the problem for you. So let's get — let's get beyond that, because you probably want to get to the second order. All right. Because that's where I want to be. So at this point, we file a motion for reconsideration. The judge has the full deposition in there, and if I'm the judge, I'm kind of annoyed not just that the defense counsel also — or, sorry, not just the plaintiff's counsel, but also the defense counsel. It's like, why didn't you guys give me this before? Like, nobody's helping me out. And, like, at this point, it's clear that the differential ideology is completely flushed out in the deposition. Well, we'll get there. I'm a little less certain maybe than you are on that, but let's — it's certainly more, but let's get there. Before we get there, though, what standard at the reconsideration stage must the trial court apply? It's not the Rule 59 standard. OK. What standard did you tell — and when I mean you, I don't mean you, because I know you were not — you're appellate counsel. I know you. I know you were not there at trial. But you, your client, what did your client tell the district court to ask to apply? We used the language of the Rule 59. How could — I agree. How could — I think it's page 8 or 7 of the motion. How could the district court possibly have abused discretion by applying the standard that you told it to apply? Right. So, to me, as an appellate lawyer, it's obvious that this is the correct standard. It's not the Rule 59 standard. It's an interlocutory order. You apply this other standard. I've been well aware of this, like, authority from our circuit and other circuits that say this. I don't — I mean, it's an invited error question. I don't think that we invited that error because we were so obviously wrong when we asked the court to apply the standard. I think Judge Carnes is laughing because no one has ever made the it's-so-wrong-that-it-can't-be-invited argument. But — I love it. But it's great to be a first. I will say this. I've done some research. It's not a case that y'all cited to us, and I'm not expecting you to know it. But EEOC v. Smith-Pontiac, 896 F. 2nd 524, we — in almost not identical but really close circumstances, dealt with a Rule 60 as opposed to a 59, where the court — same thing, was given the wrong standard, then on appeal they said, no, you should have applied this other standard. And we said, we will not reverse this decision because it — the district court — because the defendant invited the error. And I'm having trouble with that. I would say it's akin to, like, getting, like, something really fundamental wrong, like the summary judgment standard or — Well, okay. So let's talk — let's explore that. So I did a lot — I looked at this a lot, and it seems to me as if we have not been as clear-cut as you said. Now, maybe some district courts have done it, but I'll show you, again, another decision of ours that I'm not sure that either party cited, Region 8 Forest Service Timber Purchasers Council v. Alcock, 993 F. 2nd 800, where we've said, quote, this court has never explicitly considered the standard of review to be applied to a district court's grant of a motion for reconsideration of a non-final judgment. We've laid out the standard for a final judgment, and then we said, we see no reason to apply a different standard when the party seeks reconsideration of a non-final order. And then we cited that as recently as — we've cited in unpublished cases since then that, quote, we have at least indicated that Rule 54B takes after Rule 60B. Now, I think as a matter of text, that's probably wrong, but how — if there's this question mark out there, how can we expect the district court to have abused this discretion? May I ask one of those fire panel questions? Sorry. That was from 1993. Okay. So the oldest case that I cite is — Was the Fifth Circuit. It was the Old Fifth Circuit. And then I think that that decision that you're citing from 1993 would be inconsistent with the Fifth Circuit decision. You can't put those things together and have it make sense. Well, all it's saying — all that — all that saying, though, is it's unclear. It doesn't — it doesn't hold that this is the standard or not. It's saying that we've never explicitly said it one way or another. I've read the Old Fifth Circuit case that said even that doesn't quite say this is the standard you apply for interlocutory reconsideration. Can I ask a follow-up question that I'd like your thoughts on? So is it — is it perhaps that district courts have discretion to determine the standard that they are going to apply to motions to reconsider their own orders that are non-final? So I mean, if you're a district court, you could say, for example, you know, I'm up to reconsider anything on evidentiary issues to when that evidence comes in on trial, right? I'm willing to reconsider anything. And some other district judge could say, look, I really want this motion in limine process to work really efficiently, and I'm just not going to reconsider my motion in limine rulings unless there's something extraordinary that happens. I mean, couldn't a district — couldn't that itself, that standard itself, be a discretionary question? I don't think it's the standard that's applied as discretionary. And we've kind of got two things going on here because we've got the prior panel precedent problem, and then we also have this potential lurking circuit split with what other circuits have done. The two standards sound kind of close, but the part that's very different is like it's — it's got to be extraordinary. It's got to be useful. Oh, yeah. Look, I mean, look, when I was a district judge, I took the position that my motion in limine rulings were completely irrelevant, and we were going to be at trial, and what was going to happen at trial was going to happen at trial. But couldn't another district judge say, I don't want that to happen. I'm going to apply a standard where my motion in limine rulings are the final ruling for me unless something happens different between now and trial? And why would we as an appellate court tell them this is the standard you must apply for your own evidentiary rulings? You're giving — you're thinking, I'm not going to reconsider until some future date and something future is going to happen here. Like this is it. Like this is the end of the — I mean, the order's interlocutory, but it's going to end the case. So you couldn't say it's like final until it's not final. I think under either standard, we still would win because this is the part about the deposition where it flushes out the differential ideology. And so, like, we agree that — I don't agree, but we've identified the methodology, differential ideology, the methodology. We agree that we've ruled it in because, you know, in the reports and in the deposition, he says she's got extensive fibrosis where the mesh is. And then there's the stuff about ruling it out. And I think this is, Judge Luck, what you and I wanted to talk about. Does it really — But the — so let's talk about it. So I — let's say that I'm with you with regard to a bunch of the things, including — I'm going to pronounce it wrong, but where — all these things where one organ goes into another organ. But it still seems to me that there are some things that he didn't raise. Kidney stones, asthma, bipolar disorder, headaches. Now, in your brief, you sort of scoff and say, that's ridiculous. Those things can't possibly cause pain in the pelvic area. But from a — you're a district judge. I know nothing about medicine. When I tell you I know nothing, I know nothing about medicine. And I have a doctor who you're saying is an expert who's telling me that these are the ruled-in possible causes and then doesn't rule four of them out. So it may seem silly to you, and you know way more about this than I do, but if he doesn't rule those out and doesn't say a word about them, how can we say he completed the differential etiology? I think he was the nub of the case, because he's not asked at the deposition about that. The deposition doesn't go the way I would normally read these types of — Right. You didn't mean it as an expert affirmative statement of his methodology. This is just a defensive deposition. Right. So normally, what you'd see is like, OK, what did you rule in? I ruled in this, this, and this. OK. What did you rule out? I ruled out this, this, and this. Why? And then you'd have the answer. Now, the expert report doesn't explain — he explains that he does rule them out, doesn't say that he — why, and then at the deposition, it's never addressed. And then I'm over the top — Can I ask one? Can I ask one? You know, can I — actually, I have a question about something that Judge Locke just said. I mean, so I've read the expert report a couple of different times. I'm not actually sure he does rule in these things. I mean, on the expert report, it just says, here's her medical history. She has bipolar disorder. She has asthma, these things. What do you say about that, both as a kind of a response to Judge Locke's point that, you know, maybe he didn't rule these out because he never ruled them in, but also, is this a differential etiology that makes any sense, given that there's really nothing on his expert report that rules anything in? There's two ways of reading that expert report, and I don't know — I don't know which way is the — Well, that's a bit of a trick box for you there, because if you answer one way or another, that could be a real problem for you, that question. Right. So, he says the history, he says he did a differential etiology, and he says he still concludes that the mesh was a substantial factor. I think he's — that sentence is stating some stuff is getting ruled in. Some stuff may or may not be getting ruled in. He's definitely ruling in the mesh, and then he's definitely ruling out some of the stuff. So, what should have happened, probably, at that point when the defense got the report? They should have said, what do you mean? Please give us an amended report that's more clear. But, counsel, that's all the district court had, at least in the first order, and if he doesn't even meet Chapman's step one, the ruling in, then how could we possibly say that there's enough for the district court to have made a conclusion that this is a reliable differential diagnosis? That's where it's, like, unclear in that sentence. It might go halfway through the sentence. It might go two-thirds of the way through the sentence. I don't think there was any argument. It is important to look at what was framed up by the motion and what was responded to. So, the motion talks about prior pelvic surgeries, the hysterectomy, the UTIs, and the G3P3. We respond, obviously, without the deposition. And then the order doesn't really seize on any of the arguments that the motion raised. It sui sponte says, well, you never dealt with the rectocele, cystocele, or uterine prolapse. And that was sort of shocking to all the lawyers, I think, because it's like, well, you know, these devices fix that. And he says that in the deposition. Like, you know, the devices fix that. And the uterine prolapse, how could it prolapse because she doesn't have the uterus? We've gone over the time, counsel. Thank you, though. We appreciate it. I know there's a lot to say on the case. Thank you. Thank you. May it please the court, Val Leffert for the athlete. I think I'm going to jump straight to order two for just one moment because I've not heard a serious argument that order one is an abuse of discretion under this court's case law in Chapman, Hendricks, and Kilpatrick. When we look at order two, number one, the district court applied the standard that was outlined in the motion for re-hearing. At page seven of 124, which is the motion for re-hearing, they point out the standard, which is the exact same standard that the district court applied. But what I would supplement to the discussion is that the district court realized that this was an interlocutory order that's also on page seven, and it cites this court's decision in Toole v. Baxter Health Care, which says, if it's an interlocutory order, I think Justice Bradshaw just brought that up about your honors practice when you were on the district court, it's an interlocutory order disciplinary power to reconsider it. The court acknowledges that on its own accord, acknowledges it's not cited, it's the citation in the order, which is 141, the court cites Toole v. Baxter Health Care, which quotes the old Fifth Circuit decision that counsel just brought up. And so it's difficult to fathom an abuse of discretion for failing to apply a standard that was never cited to the district court. The court was fully aware that this was an interlocutory order. In no case they have cited, respectfully, under Rule 54B from this court would hold an abuse of discretion for failing to consider something that should have been provided but wasn't provided. Yeah. Let me give you my ... This is my best case for the plaintiff's abuse of discretion. So in my view, the plaintiff's best case for abuse of discretion is, look, what happened here is the defendant filed a motion that was addressed, that all the lawyers knew what was going on, and the defendant said the reason this expert should be disqualified is because he failed to rule out the hysterectomy. And then the plaintiff responds, addressing why that made sense to rule out the hysterectomy, and then the district court, sua sponte, raises these other issues that I cannot pronounce, sister cell, avia cell, whatever. And then the plaintiff says, oh my gosh, we didn't respond to those, we didn't address those because we had no reason to, and it turns out everybody knows those have nothing to do with this at all. And then so they file a motion for a hearing, and then the district court denies that motion for a hearing, saying you should have given me that before. But the plaintiff says, how are we supposed to know to give it to you before? This wasn't an issue in the defendant's motion. So what do you say about that? Well, one, the court reviews our Daubert motion. We relied on Chapman and Hendricks saying it's the burden of the expert to first rule in to list them all out, and we already said that list is incomplete, right? I mean, we just established, to begin with, the list of ruled in is just a recapture of the medical history, which is incomplete. It doesn't say, for example, that she had pelvic pain going back from when she was 12 or 13 years old. It doesn't talk about the vaginal tears. It doesn't talk about the anal sphincter, the tear of the anal sphincter, the child birthing injuries that she's had. So that list to begin with is incomplete. And then we said it is the expert's burden to come forward and explain, give a scientific and systematic explanation for ruling out. That the district court just picked up an example. This was including, the order doesn't, that uses those, the uterine prolapse, the sysocele and the rectocele as an example. It doesn't say that's the only flaw with that differential diagnosis. It just uses that as an example. Yeah, but still, I guess, and this is mostly for being a devil's advocate. But I mean, how is the plaintiff supposed to know? I mean, so for example, it would seem very odd for the plaintiff to waste the district court's time providing a bunch of evidence to the district court why asthma was ruled out, right? The reason the plaintiff is responding to this motion is what you say in the motion. And you don't address. I mean, I've looked at, I've got your motion. I don't, I think I'm right about this. Your motion doesn't say anything about these words I can't pronounce. It's all about the hysterectomy, right? Well, I think, I think we challenged that there was an incomplete diagnosis, an incomplete differential diagnosis. So it's the expert's job and the plaintiff's job to profit the reliability of the expert's opinion. That is their job. And it's his job to do that in his report. That's what Rule 26 provides. It's not our job to go take his deposition and help him fix the report. That's not our job, nor is it the district court's job to rummage through a deposition that wasn't provided to him to it and try to fix it for the plaintiff. That's not the district court's job. That's the job of Dr. Rosas-White to begin with, and then plaintiff's counsel to provide it to him. So, there's not an abuse of discretion to say I'm unwilling to do that in order, and I just want to just, I want to make sure I answer your question completely, Judge Brasher. When it comes to hysterectomy, the explanation that was given was rebutted by the record. The district court later noted that in Document 172. It noted that the explanation given for the hysterectomy was rebutted by the record. So that one explanation was false. And then what we have on rectocell and cystocell, Dr. Kahn found a cystocell. She removed part of the exer, the front part of the exer, now I'm getting really technical, but she removed the front part of the exer, which is supposed to stop the cystocell. So, it's actually not automatic to believe that cystocell couldn't appear. Can I ask a medical question? Sure. So, I am no expert on any of this stuff, but the, what I understand the counterargument to be is, well, she had a hysterectomy, so none of these things could possibly happen or have been effective, right? That's the response that they give. How does a hysterectomy have anything to do with cystocell, for example, which is where the bladder falls into the vaginal wall and the vaginal canal? Hysterectomy has nothing to do with that, right? Exactly right. What's important here is that Dr. Kahn, the treating, the explaining physician, found What about rectocell? Rectocell, as I understand, is where the rectum sags into the vagina, right? Correct. How does that have anything to do with a hysterectomy? Correct. And on that one, their argument is that, well, you performed the procedure with the exer device, that should have fixed the rectocell. But they didn't tell the district court that, even in the rehearing motion, okay, this is now getting very detailed, in document 124, the argument was there was an implant with the aorus, which is a whole different device to fix the bladder. So that argument, even, is to explain to the district court why these things are so obviously wrong. That's incorrect. Can I fast forward a little bit? I want to go to Dr. Miklos' testimony. So, first of all, do you agree that the factors that we consider in determining whether it was substantially justified or harmless in exercising the sanction here are, first, the explanation given for the fact that it was turned over late, second, the importance of that evidence in the case, and third, the prejudice to the opposing party? You agree those are the factors we consider? That's right. Okay. I think that comes from Romero and has been applied in other cases since then. So the explanation, as I understand it, from opposing counsel is that, yes, he saw her in July, and yes, he believed that the cause of the pain was the mesh, but that he wanted to, before he rendered an expert opinion, he had the reasonable request of looking through what I imagine is a lot of medical records before doing that. Is that not a reasonable or fair explanation? So I think in this case, she was aware she had a treatment in July, right? And at that point, as the district court found, she was aware of his opinion. And so if he's now going to render an expert report, right, they can put us on notice or the district court will notice, we need to reopen discovery, here's a new witness, we need to reopen this. Because as the district court found... Well, let me ask you this. If they, let's say that had happened, they immediately send a notice and says, we have a new expert witness. Our expert needs about six months or five months to go through the medical records in order to provide a report. That's what would have happened, right? I think they would have applied to the district, right. They would have applied to the district court, and I think that would have been a different analysis at that point. But that's not an unreasonable explanation, that it would take five or six months to get a report from a doctor. I imagine you're in this business, the doctors take a long time sometimes to do what they need to do, especially if they're a practicing physician. I think it's not unfair to say for the district judge, it's unreasonable if we're three months after summary judgment is fully briefed, if we're three years after the expert disclosure deadline, in eight years after the case is brought... That may be, that goes more to the prejudice part, but I'm talking about the reasonableness of the explanation. That's not an unreasonable explanation to say, he saw her, he believes this is the cause, but he wants to run down the medical records before he renders a medical opinion in court. But the question is, it still has to be substantially justified though, right? Well, I'm asking, the factors that I thought we agreed and that seemed to come from the case law is what the explanation is. Is that not a reasonable explanation, I guess is my question to you? But not just the explanation has to be reasonable, the actions have to be reasonable. The explanation, there's no reason, as he points out, for not notifying the other side or the district court that we need to halt the trains, that we need to stop the trains and there's another expert who wants to come into this case. And if they then say in that notice, it takes us five months, it takes six months, which if they had done that, well, then maybe we're looking at a different case. But the reasonable explanation, it doesn't explain why there wasn't any notification. And the importance factor, I mean, this testimony is dispositive. It's why you jump to final summary judgment right away on causation. This is the specific causation and getting specific causation evidence was dispositive to this case. Correct. So it's important. I mean, you can't dispute that. No. Okay. And then the prejudice to the opposing party, what's the prejudice to you? I understand the prejudice to the court, and I might be similarly annoyed as Judge Wetherall was by how this played out, but what's the prejudice to you? So we're defending hundreds, if not thousands, of mesh cases. We have significant costs that would come about having to take the deposition, reopen discovery because now we have to give Dr. Miglos' testimony to our experts. We're starting over again. And then we have to have Daubert, we would have filed a Daubert motion on Dr. Miglos had it been allowed. We would have challenged his differential diagnosis, and then we would have re-briefed summary judgment. But all that would have happened if Dr. Miglos was disclosed earlier. What's the extra, I mean, every one of the steps you just mentioned, other than maybe having to file another summary judgment motion because summary judgment was already briefed, would have happened if Dr. Miglos had complied with it being timely. So I'm having trouble understanding what the prejudice is. What's the increase in prejudice to you by the fact that this happened from what otherwise would have happened? At some point, we're entitled to finality, too. At some point, we're entitled to know this is the case we're facing, this is the case we have to defend, here's our summary judgment briefing. We can't go back and back and again have do-over after do-over after do-over because, A, there is a cost associated with it, but also there's an annoyance factor and knowledge of what is our position for settlement negotiations, for any of these things. We have hundreds of cases that we're defending, MeSH cases, and we can't have one case go back and go back and go back, and as the court put it, it would frustrate the purposes of Rule 26. It would frustrate the orderly disposition of this case, and respectfully, if that were whether it's the explanation or the substantial justification, if that were good enough, Rule 56 is done. Yeah. Let me ask you this question. How long was this trial supposed to last? Wasn't it three weeks, a three-week trial, something like that? Two weeks? I can't swear that usually a MeSH case is longer than that. Do you know, I don't know the answer to this question, but do you know whether, so let's say that the district judge had allowed this new expert in, would you have been able to conceivably meet your trial deadline if the new expert had come in? So the disclosure at that time was only two months away from trial, okay? So yes, this would have presented initially those... The trial would have had to have been moved, right? Correct. But I always concede this, because I don't want to mislead the court. COVID-19 happened in the middle of it, right? So... Didn't the district court, though, say, I thought the district court addressed that and said, even with the... Because I think what the district court did is... Originally, the trial date was February or March, and then I think he set it off to about August or September, and he said that even that later date would be postponed given what you've laid out, which was opening back up discovery, getting deposition, dueling depositions, doing dialer motions again, and all of that would have even not met that deadline. There would have been an extra delay. We tried other MeSH cases in 2020 at that latter part, you know, in the middle district of Florida, and I think maybe not in the northern district, but yes, there would have been a delay in any event, COVID or not, and it would have added cost, at least to some degree. And that's... You don't get chance after chance after chance after chance. The case was filed eight years ago. She had a chance. She says that Dr. Rosenzweig's the greatest expert ever, right? Essentially, that's the gist of what's being communicated and what was communicated in this report. It was his burden to get it right. It was his burden to lay it out in his report, not for us to fix it later on in a deposition, and it was their opportunity to present these materials to the district court, and the district court did not abuse its discretion in saying, I'm not going to consider this now when it's belatedly submitted, and you... And this is the one thing I forgot to mention about document 124, which is the motion for rehearing, right? That document never offered an explanation or a justification for not providing the deposition transcript, for making all of these arguments that are out there. And again, the deposition does not explain, even if it were considered, does not explain... She had pelvic pain since she was 12 or 13 years old. He doesn't give an explanation what happened to that pain. Why is this pain different now? There's so many things that are not considered, but I know I'm running out of time. Thank you, counsel. Thank you. Judge Bratcher, you were asking about this, what I call the crystal ball argument. It's important to keep the motion of these things raised by the different filings in mind. Like you said, the motion just says there are four things that aren't excluded, and then we respond without the deposition, there's a reply, and then the judge raises sua sponte three different things. Now, obviously, we're not required to have a crystal ball to anticipate those kinds of sua sponte rulings. That's the ideal situation where you file a motion for reconsideration, and that's one of the reasons why... Counsel, let me ask you this. You just said, and it kind of surprised me, that you never proffered an explanation for not submitting the deposition, originally, you being your side of the case. I understand you weren't in it. Why is that? It's not in the record. There's only two things that I've been able to see in the record that you can maybe make some inference. I know that the plaintiff's lawyer's wife was ill at the end of 2019. That's mentioned in a status conference, I think it's DOC 127 or DOC 128, the transcript of that. And then the other reason is the response is actually filed right when COVID is getting hot. It's beginning of March 2020, and those are the only two things that I can think of why this wasn't done correctly. I don't... But you never proffered to the district court that way, any other reason, correct? I don't believe so. Well, you see, that makes it almost impossible to hold an abuse of discretion as to order one. It really does. I guess that's a question, but you can proceed with your argument regardless. Can you address, can you talk about the Dr. Michelot's testimony briefly? The Dr. Michelot's testimony. So I think the prejudice just isn't there. The trial, as I understood it, was 10 months off. And... The district court, am I wrong, the district judge fined in the order where he ultimately excluded it that it would affect that trial date, even the one far off, right? I don't recall that. We can go look. If I'm wrong, I'm wrong, but... I don't recall that. But I know it was long off, and all of these things would have happened, had to happen anyways, even if the doctor had delivered the report on the same day that he saw, you know, Mrs. Arabalo. I think that mostly covers it, unless... Thank you. Thank you, counsel. Thank you. Thank you, everybody. Thank you. We're adjourned for the day.